May it please the Court, as I said, I am Jeffrey Camuso, and I represent Joe and Connie Flores, who are family farmers. The Floreses, litigating in pro se, filed an adversary action in the Eastern District Bankruptcy Court, and they styled that action as an action for breach of the statutory trust created by the Perishable Agricultural Commodities Act, which I will probably, by dain of habit, refer to as PACA today. The Bankruptcy Court dismissed their action without leave to amend on the ground that the Floreses had failed to give the written notice necessary to preserve the benefits of a To whom was the written notice required to be sent? The PACA statute requires that written notice be delivered to produce dealers, and that is actually commission merchants. That would be DDJ, Inc., in this case. It depends on how you look at it, Your Honor. I think that the issue in this case is whether and to what extent the Floreses were required to give written notice to DDJ, Inc., and whether to what extent the Floreses were required to give written notice to DDJ, LLC. Is your position that DDJ, LLC acted as a commission merchant for Flores? I thought they were the buyers of the goods from DDJ, Inc. Your belief is correct, Your Honor, and that is our position. So why are we talking about DDJ, LLC? The only commission merchant here is DDJ, Inc., correct? Actually, the complaint alleges that both DDJ, Inc. and DDJ, LLC are commission merchants, brokers, and dealers. Everyone is alleged to be everything, Your Honor. This is a pro se complaint, and for that reason, it can be confusing. But didn't the Floreses sell directly to the LLC as well as to the Inc.? Yes. Yes, Your Honor. In fact, sometimes. Sometimes. And it's unclear when or how often. Right. In fact, the two issues that I wanted to focus on, and the second one really is the relationship between DDJ, Inc. and DDJ, LLC. The pack of trust comes into existence on delivery of fruit to the packing shed. And at that same time, that's when the clock starts ticking on the farmer's obligation to give written notice. The complaint alleges that at least in some instances, DDJ, LLC received fruit directly from the Floreses, and that would start their clock ticking on written notice. The Floreses gave that written notice by way of an agent, which is to say that DDJ, Inc. gave written notice on their behalf. And nothing in the pack of statute. Do you have to be licensees for that notice to be effective? No. I do not believe that is the case. And may I explain? Yes. You're saying that DDJ, LLC gave notice on Floreses' behalf to DDJ, Inc. And the question, is that your position? Just the opposite, I'm afraid. The position is that DDJ, Inc. gave written notice of the pack of trust to DDJ, LLC. Okay. And DDJ, Inc. was a pack of licensee. The Floreses personally were not. But that would mean that DDJ, LLC was a commission merchant in as much as the Floreses were concerned. I believe that's correct. And what is the evidence that DDJ, Inc. gave notice to DDJ, LLC? There's an allegation in the complaint to that effect, multiple allegations, that every time the Floreses' fruit was sold to anyone, but anyone including LLC, that they received written notice of the Floreses' intent to preserve. Through an invoice. Correct. And doesn't there have to be a requirement that the notice, if given by invoice, requires Flores to be a licensee? I do not read the statute that way. And I do not think that the statute should be construed that way. The statute says farmers, produce suppliers, so on and so forth. I'm just going to call them farmers because it's just easier. But the statute doesn't say that farmers have to give written notice of their intent to preserve the trust. If you hold a license, you may use an invoice. But the statute doesn't say farmers can't use licensed agents. And it seems to me that they could either. You're correct, Your Honor. It doesn't say that Congress has not made this case any easier for anyone, and nor has the Department of Agriculture. But all the statutes and the regulations seem to contemplate that agents will be involved in representing farmers. And, of course, they must. It would be — it doesn't make any sense to say that a farmer can't use an agent because that would mean that Mr. and Mrs. Flores really couldn't ask a bookkeeper to fill out the paperwork because a bookkeeper is an employee and just an agent. It also means that corporate farmers wouldn't have access to the PACA statute because corporations only act through agents. So you must be able to use agents of some kind in some circumstances. And the statute gives us no guidance on how to distinguish this agent is okay and that it's not. Let me understand your position. Your position is that Flores did actually give written notice of its intent to rely on its PACA statutory trust rights as a beneficiary under the statutory trust by the invoice that DDJ Inc. sent to DDJ LLC. Is that correct? That is correct, Your Honor. All right. The second point I wanted to address is the PACA issues in this case are interesting and complex. The record is, as one can expect in a pro se case, not what one would hope. But if a complaint alleges facts that amount to a valid cause of action, even if mislabeled, the trial court should not dismiss the claim. And here it's pretty clear that the Floreses were alleging the DDJ entities received property and trust for us. Third parties, and there are a number of them named, actively participated in our trustee's breach by taking our property. And they did so for their own profit. That's sufficient to state a claim for relief. And on that basis alone, the court should reverse the district court and, with instructions to allow the Floreses at least an opportunity to make it clear what their theory is and how they'd like to proceed. I think that they have really, just on its face now, the complaint probably supports a claim for relief, but I certainly wouldn't suggest that the district court couldn't or rather the bankruptcy court couldn't ask the Floreses to replete it without reference to the PACA statutes. But either way, they certainly stated a group of facts that give them a viable legal theory. I believe that the bankruptcy court and the district court worked very hard to get the right result in this case, but in doing so, they missed that sort of basic issue, which is did they state a viable theory? And I think the Floreses did. They missed what basic issue? Will you kindly speak up? I'm sorry, Your Honor. The lower courts worked very hard to get this matter right, but in doing so, they focused on PACA, but they missed sort of the basic notion that if a complaint alleges facts to support any viable legal theory, that the plaintiff should be allowed to proceed. And on that basis alone, without considering the PACA issues, which are interesting and numerous, the court should reverse this matter. With that, I'd like to reserve the balance of my time for rebuttal, unless there are more questions. Good morning, Your Honor. May it please the Court, my name is Albert Berryman. I represent Bank of the West, which is a successor to United California Bank, which financed the Enoch Packing entities at various times prior to its bankruptcy filing. And I disagree, obviously, with substantially everything that counsel for the Floreses has stated, and I believe that both the bankruptcy court and the district court treated this issue in the proper academic approach. There were prescribed regulations under 7 CFR 46.46, and the various subdivisions in there, that required a grower in the position of the Floreses to provide notice of their preservation of their rights under the PACA statutory trust. If those notices are not given, those rights expire. Is your position that... Another term could be used, but they're gone. Is it your position that the Floreses could not use a third person to with an agent to give the notice which PACA requires the grower to give? That question, Your Honor, I believe was addressed in the briefs by all sides. And it is our position that those rights, once they had expired, could not be preserved by an agent or by anyone else. I didn't ask that. Is it your position that Flores could not designate an agent to give notice under PACA if it were timely? I believe that that would be proper, Your Honor. I'm not foreclosing that, but that's not what happened here. Well, your position is that whatever notice was given, it was out of time. That's correct, Your Honor, because it had expired by reason of the Floreses not giving their own notice. Wait a minute now. Just a minute, Mr. Bergman. Mr. Bergman, if you follow Mr. Camiso's argument that DDJ Inc. could give notice to Flores and the notice that DDJ Inc. gave was timely, wasn't it? It was not, Your Honor. Why not? Because the Floreses had never given an original notice. They had to give an original notice to their commission merchant. You mean the DDJ Inc. notice was timely only as to its own interest and not as to any interest of Flores? That's correct, Your Honor. And as the district court pointed out, and it cited the legislative history and the exchange between then Congressman Panetta and others, where you actually had two trusts that could have come into existence. A gives goods to B. One trust is created, A being the Floreses in that case and DDJ, the DDJ commission merchant entity being B. B then sells the goods to C, who's the other DDJ entity, and another trust is created. Right. And Congressman Panetta's question was can A then pursue a claim against C, and the answer in the legislative history was no. And that legislative history was a long time ago, and we have not had a case since then interpreted by this court or, I believe, any other circuit court, that says that the intermediary there can preserve FACA rights acquired by giving notice to a third party. And I really think that's where this court, the direction this court should take this morning is we have statutes that are unambiguous on their face, the 499 C, E, 3, and 4, that relate to the original grower preserving its rights and then the licensee preserving its rights. We have unambiguous regulations in the 7 CFR 46.46 series that, frankly, cannot be rewritten by this court or by any other court, and I don't think they have done so in the past. This court came very close in the Marvin Properties case where the USDA, which at one point in this FACA process was involved, and the USDA had given notice to the buyer that the grower had preserved its rights, and because that issue was raised for the first time on appeal, this court said, we don't think that can happen, but we're not saying that other than as dicta in this case. Well, it's never been raised since then, to my knowledge, until now. You're aware that well-considered dicta is considered the rule of law in this district, I mean, this circuit. Correct, Your Honor. And I highly agree with the Marvin Properties dicta and the holding in that case as well. If this perpetuation of the rights that had expired is acceptable in the commercial setting, we could end up with a never-ending chain of events that would preserve rights that had expired by the effect of the regulations. I believe the district court used the term the rights will, quote, always dash already, I'm sorry, will be, quote, always and already preserved, end quote, without having to give notice of any kind. I don't think that's the intent of these statutes or these regulations. Unless the court has any other questions, I'm prepared to yield my time to Mr. Lestretto. Good morning. May it please the Court. My name is Rene Lestretto. I am the attorney representing Robert Hawkins, who is the Chapter 7 trustee in the Enoch Packing case. I concur in all of Mr. Berryman's comments. I would only like to, in addition to the Marvin Properties case, remind this Court of the San Joaquin Food Service case, which the Ninth Circuit held in a notice case. That was a case where notice was discussed, and the issue there was the failure to include certain language in an invoice. And in that case, the Ninth Circuit was clear that PACA is a statute that must be strictly construed, and the Ninth Circuit in that case looked at the substantial compliance arguments raised by the parties in that case and indicated that they were not going to follow substantial compliance, but rather strictly construe the statute because that was the Ninth Circuit authority there. And other than that statement, Your Honor, I concur in this Court. I concur in Mr. Berryman's statements. And unless the Court has any questions, I'm willing to yield my time to Mr. Swanson. Thank you. Mr. Swanson. I don't have a question. I have a question. There's seven minutes left for the appellees. Do you wish to speak, Mr. Swanson? I'm sorry. All right. If there's no further presentation by the appellees, we'll go back to your rebuttal time. Your Honor, this is... My phone is having issues with your time. If they want to use that. No. What do we do with the two cases that the appellees rely upon? San Joaquin Food Services, which talks about strict compliance with language and modern properties. You realize that regardless how much merit we might find intellectually and even emotionally in your case, a three-judge panel, and I certainly cannot overrule another three-judge panel. I recognize that, Your Honor, and that is an excellent rule, and it's one that... In order for this panel to apply a substantial compliance standard to the notice necessary to preserve a pack of trust, the Court would have to, if you'll pardon the expression, slice the salami very thinly. And let me explain why. As an initial... Keep your voice up. I'll try, Your Honor. With this microphone in my face, I'm worried that I'll deafen everyone. The Marvin Properties case simply did not address whether or to what extent a farmer can use an agent. I'd like to begin there because it simply did not reach the issue. In order to make any suggestion one way or another about whether that was appropriate, and frankly, I'm not aware of any case where someone has been able to use a U.S. Government agency as their agent. But that is not this case. This involves two private parties. What about Mr. Berryman's argument that, well, even if the foresters could have used DDJ Inc. as an agent, the notice it gave was untimely with respect to the foresters anyway? I don't know that the record reveals anything about timeliness of notices here. I think that what Mr. Berryman was arguing was the same. But if it doesn't reveal anything about timeliness, you lose because the burden of proof is on you. I believe that the record simply says timely or gave notices and is ambiguous as to whether it was timely or not. You have to establish that you gave notice one way or the other within 30 days of the creation of the trust, correct? That's correct. But what's the evidence of that? The only evidence are the allegations in the complaint. And the complaint alleges that invoice notice was given on the florist's behalf. And to the extent that the complaint is ambiguous, that ambiguity should be construed in the florist's favor. If it's ambiguous as to timing, then it should be construed in the florist's favor. And at a minimum, they should have been instructed, amend your complaint to address the timeliness issue. As I understand Mr. Berryman's argument, he believes that the florists had to give notice to DDJ Inc. and DDJ Inc. had to give notice on their behalf to third parties. That might be true in those circumstances where the florists delivered produce to DDJ Inc. The trust comes into existence on receipt and the clock starts ticking on receipt. In those instances where the florists delivered fruit to a third party, including DDJ LLC, that's where the trust was and that's where the notice needed to go. The fact that DDJ Inc. was acting as the florist's notice does not mean, or excuse me, the fact that DDJ Inc. was acting as the florist's agent would not require them in that factual scenario, would not require the florists to give notice to DDJ Inc. I would like to address the legislative history. If the florists delivered produce directly to the LLC, right? Correct. If the florists delivered produce directly to the LLC, right? If the florists delivered produce directly to the LLC, right? If the florists bypassed DDJ Inc., then in those — on those transactions, DDJ Inc. would give no notice at all because they wouldn't send an invoice, right? There would be no notice. Well, the invoices themselves contained the PACA notice. I know that, but there would be no invoice sent by DDJ Inc. if it was delivered directly, that's what I'm saying, to the LLC, would there? No. I don't think that the record says one way or the other how it actually worked, but it is — That's the way it — Well — Why would anybody send an invoice on a transaction they're not involved in? Well, they were involved because they were acting as the florist's agent. It's really — it would work like this, Your Honor. I'm going to go ahead and ship my fruit directly to the LLC. This company over here could be a bookkeeper, could be an accountant, could be my daughter-in-law, sends written notice to the people who receive the fruit on my behalf. That seems to make perfect commercial sense. There are plenty of farmers who don't want to do their own paperwork, and there's no reason why you can't use an agent under those circumstances to do the paperwork for you. Well, are you saying the record shows that the — that Inc. was sent an invoice and every shipment of produce shipped by the florist? I believe that that is the allegation in the complaint. I believe that is correct. Regardless of, you know, who the initial buyer was? I think that's correct. I believe that that's what the complaint alleges. I did want to get back to the legislative history because there's something good in it for me, and I want to make sure that the Court is aware of it. We were talking about A to B, B to C, and what about A to C? And the witness for the Department of Agriculture answers the question, can A pursue an action against C, and his response is no. And that's all that's quoted in the district court's opinion, and that's all that's quoted in my opponent's briefs. But I would like to read to the Court what that witness says next. Now, there is one exception. If you get a relationship where the goods are consigned to us and the title always remains in the owner of the goods, he can pursue his trust right to the ultimate by delivering through the chain. Not inexpertly articulated, but what that suggests is, is that where you have a consignment situation where title remains with the farmer, they perhaps can and should be able to pursue their trust all the way to the end of the chain. And there are allegations in the record, or at least statements to the ---- But title can't remain in the farmer and give rise to a trust because the trust only arises upon the sale of goods. That is not true, Your Honor. The trust arises when the goods are delivered. Oh, I see. And so your position is the trust arises to pay someone when the goods are delivered, even though the title hasn't passed to the buyer. That is correct. I see that I'm over time, Your Honor. I would like to say thank you. Thank you. All right. That's the third and last case on today's calendar. That case will stand submitted, and we will be adjourned until tomorrow morning at 9 o'clock.
judges: Reade, Tashima, Bea